## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KIMBERLY R. SELLERS,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:12-CV-1655-KOB** |
| | ) | |
| **MICHAEL ASTRUE** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On August 21, 2009, the claimant, Kimberly Renee Sellers, protectively applied for a period of disability and disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. (R. 9). The claimant alleged disability beginning on July 6, 2009, arising from lower back pain, depression, and diabetes mellitus. (R. 138). The Commissioner denied the claims initially on November 25, 2009. (R. 9). The claimant timely filed a request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on January 13, 2010. *Id.* In an opinion dated January 10, 2011, the ALJ found that the claimant was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act, and, therefore, was ineligible for a period of disability and disability insurance benefits, as well as supplemental income. (R. 18).

The Appeals Council subsequently denied the claimant's request for review on March 26, 2012, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). As the claimant has exhausted her administrative remedies, this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The court has before it the following issues for review:

(1)   whether the ALJ properly considered all of the claimant's impairments in combination with each other in determining whether the claimant was disabled; and

(2)   whether the ALJ properly applied the Eleventh Circuit's three-part pain standard, and thus, properly discredited the claimant's subjective testimony of pain.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. But this court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must look not only

2

to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take into account evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1)    Is the claimant presently unemployed?
(2)    Is the claimant's impairment severe?
(3)    Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)    Is the claimant unable to perform his or her former occupation?
(5)    Is the claimant unable to perform any other work within the national economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

Where a claimant alleges multiple impairments, the Commissioner must consider the combined effects of all impairments in determining disability, not merely the individual effects of the several impairments. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); *Walker*, 826 F.2d at 1001; 20 C.F.R. § 416.923. Even where an individual impairment would not render the claimant disabled, the combination of the claimant's impairments may establish disability. *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986). Statements from an ALJ that the claimant "did not have an

impairment or combination of impairments" that met the listings constitute evidence that he considered the combination of a claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *see also Jones v. Dep't of Health & Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986).

When evaluating subjective complaints such as pain, the Commissioner must apply the Eleventh Circuit's pain standard. The Commissioner must determine whether

(1)     there is evidence of an underlying medical condition; and either
(2)     objective medical evidence confirming the severity of the alleged pain arising from that condition; or
(3)     that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). While the ALJ is not required to recite the pain standard verbatim, he must make findings indicative of a correct application of the pain standard. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The ALJ must clearly articulate adequate reasons for discrediting the claimant's subjective allegations of disabling symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Further, in evaluating subjective claims including pain, the Commissioner may consider the claimant's ability to perform certain activities of daily living (ADLs), as well as the impact of such activities on the claimant's credibility. 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding that ADLs may be relevant as they pertain to the claimant's ability to perform her past work).

### V. FACTS

The claimant was thirty-nine years old at the time of the administrative hearing and has

completed the eleventh grade. (R. 16, 142). The claimant has past work experience as a cashier checker. (R. 59). The claimant alleged that she was disabled by lower back pain, depression, and diabetes mellitus beginning on July 6, 2009. (R. 9, 138).

*Mental & Physical Limitations*

On April 12, 2006, the claimant visited the Cooper Green Hospital Emergency Room in Birmingham, Alabama, complaining of neck pain radiating down her left side. The claimant rated her pain as a 7/10 and stated that the pain increased with movement. Dr. Rhett Krone, an emergency medicine physician, diagnosed the claimant with cervical radiculopathy and prescribed Lortab. (R. 232-234).

On May 12, 2006, the claimant was involved in an automobile accident and returned to the Cooper Green Emergency Room via an ambulance. The claimant stated that she remembered a car turning in front of her as the light turned green, but that she could not remember the accident. The claimant complained of neck pain and mid-back pain. Dr. Dana F. Mitchell ordered X-Rays of the claimant's cervical and thoracic spine and a CT-Scan on the claimant's head. Both the X-Rays and the CT-Scan returned negative, and Dr. Mitchell discharged the claimant with a prescription for Lortab and Robaxin. (R. 229-231).

On June 12, 2006, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act. The claimant alleged that she was disabled by reason of lower back pain, diabetes mellitus, and depression. (R. 67).

On July 27, 2006, the claimant visited Dr. Adrienne Carter at Cooper Green. The claimant complained of pain in her right hip, radiating from her cervical spine to her lumbar spine. The claimant could not bend forward at greater than fifteen degrees, and her back was tender to the touch.

The claimant also reported pain during a straight leg raise. Dr. Carter further noted that the claimant exhibited an altered gait. Also, the claimant reported depression. Dr. Carter noted that the claimant was currently taking 20mg Prozac, but that it was ineffective. Dr. Carter increased the claimant's Prozac to 40mg, scheduled an MRI of the claimant's spine, and scheduled a follow-up visit in six weeks. (R. 228).

The claimant returned to Dr. Carter for a follow-up visit on September 7, 2006. The claimant complained of pain in her lower back, right arm, and right hip, as well as severe headaches. Dr. Carter noted that the claimant's depression had worsened, citing an increase of stress, physical pain, and financial difficulties the previous two weeks. The claimant stated that she found taking a double dose of Prozac effective, so Dr. Carter increased the claimant's Prozac prescription from 40mg to 80mg. The claimant also reported occasional insomnia, taking Clavil when needed. Dr. Carter noted that the claimant's July MRI revealed no spinal canal stenosis and referred the claimant to physical therapy for back stabilization and muscle pain. (R. 227).

On December 1, 2006, the claimant returned to Dr. Carter for a follow-up visit. Dr. Carter diagnosed the claimant with type II diabetes mellitus and noted that the claimant's diabetes was uncontrolled. Dr. Carter also stated that the claimant presented with hypertension, as her blood pressure was 155/84. Dr. Carter prescribed Monopril for the claimant's blood pressure, scheduled a diabetic exam, and scheduled a follow-up visit for six weeks. (R. 225).

On April 2, 2007, the claimant visited the Cooper Green Emergency Room, complaining of a painful boil on her left thigh. Dr. Carol Leitner diagnosed the claimant with cellulitis, boils, and diabetes mellitus. Dr. Leitner prescribed an antibiotic for the claimant's cellulitis and Glucophage tablets for the claimant's diabetes. (R.221-223).

On November 24, 2008, Charles L. Brower, an ALJ, found that the claimant had been disabled from June 12, 2006, to October 8, 2007, and awarded the claimant a period of disability benefits. The ALJ found that the claimant was disabled because of disorders of the lumbosacral spine, diabetes mellitus, and depression. (R. 67).

On December 12, 2008, the claimant returned to the Cooper Green Emergency Room, complaining of mild to moderate lower back pain that she had experienced since her automobile accident. The attending physician[1] prescribed the claimant Naproxen. (R. 219-220).

The claimant again visited the Cooper Green Emergency Room on February 10, 2009. The claimant reported muscle spasms and pain in her thoracic and lumbar spine. The attending physician prescribed the claimant Naproxin and Ultram for pain. (R. 216-218).

On March 1, 2009, the claimant again visited the Cooper Green Emergency Room complaining of lower back pain. The attending physician prescribed Demerol for the claimant's pain. (R. 212).

On April 30, 2009, the claimant returned to the Cooper Green Emergency Room, complaining of faintness and dizziness. The attending physician diagnosed the claimant with hyperglycemia and poorly controlled diabetes mellitus. The physician prescribed Glucophage to better regulate the claimant's blood sugar. (R. 209-210).

On August 11, 2009, the claimant visited Dr. Martin Bohnenkamp at Cooper Green. Dr. Bohnenkamp noted that this visit was the claimant's first scheduled doctor visit in two-and-a-half years and that the claimant stated she was applying for disability benefits. The claimant complained

---

[1]The record does not specify which physician treated the claimant at the December 12, 2008, February10, March 1, and April 30, 2009, visits.

of lower back pain that began after her automobile accident. The claimant stated that she was rear-ended while riding a school bus and that her pain worsened every day. The claimant stated that she often needed to lie down and place a pillow under her knees. The claimant further stated that she used Icy Hot, heating pads, massage, and stretching, but never sought any formal rehabilitation after her accident. Dr. Bohnenkamp diagnosed the claimant with chronic thoracic and lumbar pain, uncontrolled type II diabetes mellitus, hyperlipidemia, and depression. Dr. Bohnenkamp ordered an X-Ray of the claimant's spine, referred the claimant to physical therapy for her back pain, and scheduled a follow-up visit in three months. (R. 208).

On August 12, 2009, the claimant underwent an X-Ray of her lumbar and thoracic spine which revealed observed very minimal scoliosis of the claimant's lumbar spine and no significant abnormalities of the thoracic spine. (R. 236).

On August 21, 2009 the claimant visited Thomas Jun, a Cooper Green physical therapist. The claimant stated that her back pain prevented her from doing her job. Mr. Jun noted that the claimant's forward bending range of motion was 40% below normal, but that her strength was 4/5 and her gait and posture were relatively normal. Mr. Jun listed the claimant's goals as increasing range of motion in extension and forward flexion by 20%, increasing strength to 4+/5, and stabilizing her core. Mr. Jun also listed the claimant's long-term goals as prolonged standing/ambulation and participation in ADLs involving standing. Finally, Mr. Jun instructed the claimant on certain home exercises and the use of heating pads and ice packs. (R. 207).

Later that day, the claimant returned to the Cooper Green Emergency Room complaining of exacerbated lower back pain radiating into the claimant's left leg. The claimant stated that she was currently taking Flexaril and Tylenol but neither was helping her pain. Dr. Larry Wade noted that

the claimant had a medical history of hypertension, hyperlipidemia, and diabetes mellitus.  The claimant reported no other symptoms than back pain and muscle spasms. Dr. Wade noted that the claimant had para-vertebral tenderness, but otherwise appeared in "no apparent distress." Dr. Wade prescribed the claimant Tramadol and Prednisone for pain. (R. 240-242).

Also on August 21, 2009, the claimant protectively applied for disability insurance benefits and supplemental security income. The claimant alleged that she was disabled by lower back pain, depression, and diabetes mellitus, and identified her onset date as July 6, 2009. (R. 134-138).

The claimant returned to Cooper Green for another physical therapy session on August 26, 2009, where the claimant saw William Waweru. Mr. Waweru wrote that the claimant reported constant pain, but that she had performed some of her home exercises. Mr. Waweru noted that during the session, the claimant performed her exercises while complaining of minimal pain and fatigue. Mr. Waweru reminded the claimant about the importance of consistency with exercises and the use of heating pads. (R. 206).

On September 13, 2009, the claimant's mother completed an Adult Third Party Function Report for the SSA. The claimant's mother stated that the claimant prepared her own breakfast, took medication for her back, and lounged around her house the rest of the day. The claimant's mother further stated that the claimant could not stand for long periods of time or lift some things, and that the claimant's mother often assisted the claimant with child care. The claimant's mother indicated that the claimant could dress herself and use the bathroom alone, but that she could not bathe without assistance and sometimes needed help preparing meals. The claimant's mother also stated that the claimant could not perform any household work, and that she could not drive because of muscle spasms. The claimant's mother did state that the claimant could shop for food, clothes, and

household items, but that she only shopped once a month and she took more than two hours to complete the shopping. The claimant's mother noted that the claimant had no problems managing money. The claimant's mother also noted that the claimant struggled with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, and socialization. The claimant's mother clarified that the claimant could walk approximately two blocks before requiring thirty minutes of rest. (R. 155-162).

On September 14, 2009, the claimant completed an Adult Function Report for the SSA. The claimant wrote that she prepared her own breakfast, took medication for her back, and waited for her mother to come assist with housework. The claimant stated that her mother assisted her with childcare, bathing, and some meals, but that the claimant could dress herself and use the bathroom herself. The claimant also noted that she could not drive because of muscle spasms, and that she shopped approximately once a month. The claimant stated that she watched television most of the day, but that she could not sit or lay watching television too long because of her back. She also wrote that she is constantly depressed. The claimant then stated that she struggled with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, and socialization. The claimant clarified that she could walk for approximately two blocks before needing to rest for thirty minutes. The claimant also stated that she did not handle stress or change well, but that she had no problems managing money. (R. 165-173).

On November 24, 2009, Sheila Scott, a disability specialist for the DDS, evaluated the claimant's physical RFC. Ms. Scott listed the claimant's primary diagnosis as mild scoliosis of the lumbar spine, with secondary diagnoses of diabetes mellitus and hypertension. Ms. Scott found that

the claimant could occasionally lift 50 pounds; could frequently lift 50 pounds or more[2]; could stand or walk for about six hours in an eight-hour day; could sit for about six hours in an eight-hour day; and could push or pull for an unlimited amount of time within the confines of the claimant's lifting and carrying limitations. Ms. Scott then found that the claimant could frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, but could never climb a ladder, rope, or scaffold. Ms. Scott also found that the claimant needed to avoid concentrated exposure to extreme cold or extreme heat, but found no other environmental limitations. Ms. Scott also listed the claimant's ADLs as dressing herself, preparing breakfast, assisting with housework, shopping, and watching television. Finally, Ms. Scott found that although the claimant's medically determinable impairments could reasonably be expected to produce some of the pain and functional limitations of which the claimant complained, the alleged severity was out of proportion with the objective medical evidence. (R. 261-268).

Ms. Scott also completed a Vocational Rationale Form for the claimant on November 25, 2009. Ms. Scott determined that based on the claimant's age, education, and RFC, the claimant could perform her past relevant work of Cashier. (R. 174).

Also on November 25, 2009, Dr. Samuel D. Williams, a psychiatrist, completed a Psychiatric Review Technique Form (PRTF) at the request of the DDS. Dr. Williams evaluated the claimant under section 12.04 of the listings (Affective Disorders). Dr. Williams found that the claimant had the medically determinable impairment of depression, noting that he based his determination on the claimant's treating physician's diagnosis. Dr. Williams then found that the claimant experienced

---

[2]Ms. Scott's finding that the claimant could lift up to 50 pounds occasionally and 50 pounds or more frequently appears contradictory. Later, the ALJ found that the claimant could lift 50 pounds occasionally and only 25 pounds frequently.

mild limitations to her ADLs; social functioning; and concentration, persistence, or pace. Dr. Williams found no evidence of episodes of decompensation. Dr. Williams concluded that the claimant did have some depression related to her physical problems, but that her condition was mainly physical, and that objective medical evidence and her performance of ADLs did not support allegations of mental disability. (R. 247-259).

On October 8, 2010, the claimant visited the Cooper Green Emergency Room. The claimant complained of abdominal pain, radiating into her left flank and lower back. The claimant also stated that she experienced "hot flashes," but did not present with a fever. Dr. Willard Mosier noted that the claimant appeared in genuine pain and ordered a CT-Scan of the claimant's abdomen and pelvis. The CT-Scan revealed a right ovarian cyst and a GI infection. Dr. Mosier prescribed the claimant antibiotics and referred her to a gynecology clinic. (R. 272-278).

On October 26, 2010, the claimant visited Dr. Annie McCartney at the Cooper Green Gynecology Clinic. Dr. McCartney stated that the claimant experienced her menstrual cycle twice a month, and that she had severe abdominal pain that restricted her ability to function. Dr. McCartney noted that the claimant had two uneventful pregnancies, a tubal ligation, and was currently taking Glucophage, Tylenol, and Motrin. Dr. McCartney observed abnormal uterine bleeding and scheduled an endometrial biopsy for the same day. Dr. McCartney also scheduled pap, breast, uterine, and ovarian examinations, and a follow-up visit on the examination results. Dr. McCartney indicated that the claimant needed to visit her general physician, and the claimant, stating that she did not want to return to Dr. Bohnenkamp, requested a referral. (R. 269-271).

On November 23, 2010, the claimant returned to the Cooper Green Gynecology Clinic for a follow-up visit. Dr. Valentina Anselmo interpreted the claimant's examination results, noting that

the claimant's endometrial biopsy and pap examinations were benign, but that the uterine examination revealed a suspicious fibroid mass. Further, Dr. Anselmo observed a possible cyst in the claimant's right ovary, but did not visualize the claimant's left ovary. Dr. Anselmo ordered a biopsy on the uterine mass, and prescribed Provera and Motrin. Dr. Anselmo also scheduled a follow-up visit in two months to evaluate the claimant's cyst. (R. 279).

*The ALJ Hearing*

On November 25, 2009, the Commissioner determined that the claimant was not disabled and denied the claimant's application for disability insurance benefits and supplemental security income. (R. 9). The claimant timely filed a request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on January 13, 2010. The claimant, her attorney Gregory McKay, and a vocational expert, Norma-Jill Jacobson, attended the hearing in Birmingham, Alabama, with the ALJ attending via video from the St. Louis National Hearing Center. (R. 33).

First, the claimant's attorney stated that the claimant had the medically determinable, severe impairments of uncontrolled diabetes mellitus, back pain, abdominal pain, and depression. The attorney referred to an August 10, 2006, MRI that appeared in the claimant's record from her 2006 disability application. The attorney stated that the MRI revealed a degenerative tear at the L5-S1 vertebra.[3] The ALJ next questioned the claimant's attorney about the claimant's abdominal pain, and the attorney stated that the Cooper Green Gynecology Clinic was currently attempting to diagnose the source of the claimant's pain. The ALJ also questioned the claimant about her abdominal pain, and the claimant stated that the pain was related to "bad periods." Then, the claimant admitted that she was not presently seeking mental health treatment related to her depression. (R. 38-39).

---

[3]Exhibits from the claimant's 2006 disability application do not appear in this record.

The ALJ next questioned the claimant about her past relevant work. The claimant stated that she worked as a hospital technician between 1988 and 1992, and that she worked as a cashier at various locations both before and after her hospital job. The claimant stated that she often worked in excess of 40 hours per week, earning between $8.50 and $9.05 per hour. The claimant then testified that her past relevant work required her to lift around 20 pounds at the most, and that she spent the majority of the work day standing or walking. The ALJ also noted that the claimant possessed a driver's license, but the claimant clarified that she no longer drove herself because she was unable to work. The claimant testified that her mother drove her from place to place. (R. 42-44).

The ALJ proceeded to discuss each of the claimant's conditions with the claimant. The ALJ asked the claimant about her diabetes treatment, and the claimant testified that she took Glucophage pills, but they did not control her condition. The claimant stated that since July 2009, she had visited the emergency room approximately twice with high blood sugar. The ALJ then asked the claimant's attorney to point to medical evidence of treatment in the emergency room for high blood sugar, and the attorney stated that he did not know of any such evidence. The claimant testified that her diabetes affected her daily activities because when her blood sugar would get too high, the claimant would have to return to her home, measure her sugar, and take medication in an attempt to regulate it. (R. 45).

The ALJ then asked the claimant about her back pain. The claimant testified that her back pain originated from her automobile accident, and that she could not do any housework because of her back pain. The claimant testified that she previously could not afford any treatment other than going to the emergency room, but recently obtained a "clinic card." The claimant also stated that the emergency room doctors sometimes administered a shot of medication in the claimant's hip. The

14

claimant stated that no doctor had discussed the possibility of surgery with her, but that she went to physical therapy in July of 2009, when she was working and had insurance. The claimant testified that she had three prescriptions for pain, and that she still had refills of her prescription available to purchase. (R. 46-47).

The ALJ then questioned the claimant about her abdominal pain. The claimant stated that although her gynecologist had not diagnosed the condition, the claimant suffered from pain that "[felt] like labor pain" and prevents her from walking. The claimant stated that she had experienced only one episode of abdominal pain since 2009. (R. 48).

Finally, the ALJ questioned the claimant about her depression. The claimant stated that she took Prozac, but she received the prescription from a general physician, not a psychologist or psychiatrist. Further, the claimant stated that she did not find the Prozac helpful. The claimant testified that she had informed an emergency room physician that the Prozac was not helpful, but that no doctor had prescribed her different medication. The ALJ then asked the claimant's attorney if any evidence in the record reflected the claimant telling an emergency room doctor about the Prozac not working, and the attorney admitted that he knew of no such evidence. (R. 49-50).

The ALJ proceeded to ask the claimant about her typical day. The claimant stated that she usually got up between 7:00 and 7:30am, and that she stayed in her room most of the day. The claimant stated that her mother performed most of the household chores, but that the claimant could perform them if necessary. The ALJ also asked the claimant about the impact of her depression on her social activities. The claimant stated that she preferred to stay at home rather than go out with friends or family. However, the claimant attributed her desire to stay home to her back pain, inability to stand for extended periods, and a lack of places for her to sit when socializing. The claimant then

clarified that friends and family sometimes visit her at her home. (R. 50-51).

Then, the claimant's attorney questioned the claimant. The attorney asked the claimant if she had difficulty sitting, and the claimant stated that she could sit for approximately fifteen minutes. The claimant then stated that after fifteen minutes of sitting, she would need to stand for five to ten minutes, then sit again. The claimant then stated that she could walk only approximately one-half block before stopping, and that she had to stop four or five times walking from the parking lot to the hearing room. The claimant further testified that she generally spent an entire day lying down with her back propped on a pillow. (R. 51-54).

The claimant then testified that she could not lift more than five to ten pounds. The claimant stated that Dr. Bohnenkamp at Cooper Green placed this restriction on the claimant early in 2009. The claimant testified that she stopped seeing Dr. Bohnenkamp, though, when the claimant lost her job and no longer had insurance. The claimant's attorney then asked the claimant why she did not drive, and the claimant stated that her back pain prevented her from twisting to look in mirrors, and she was afraid she would be in an accident. Finally, the claimant stated that sometimes her mother helped her bathe, put on pants, and tie her shoes. (R. 54-57).

The ALJ then questioned the vocational expert, Norma-Jill Jacobson. Ms. Jacobson stated that the claimant had past relevant work as a cashier checker, classified as semi-skilled, light exertional work. The ALJ then informed Ms. Jacobson that he would present her with various hypothetical scenarios. First, the ALJ asked Ms. Jacobson about a hypothetical individual who can lift or carry fifty pounds occasionally and twenty-five pounds frequently; stand or walk for a total of six hours in an eight-hour day; sit for at least six hours in an eight-hour day; cannot climb ladders, ropes, or scaffolds; can engage in frequent balancing, stooping, kneeling, crouching, and crawling;

16

can climb stairs; and must avoid repeated exposure to temperature extremes. Ms. Jacobson stated that such an individual could perform the claimant's past relevant work. The ALJ then asked Ms. Jacobson if there were other jobs in the national economy that such an individual could perform. Ms. Jacobson listed dish washer, an unskilled, medium exertional position with 2,300 jobs in the state, and 380,000 nationally; hand packer, an unskilled, medium exertional position, with 1,500 jobs in the state, and 240,000 jobs nationally; and machine tender, an unskilled, medium exertional position with 2,400 jobs in the state, and 380,000 nationally. (R. 59-60).

Next, the ALJ asked Ms. Jacobson about a hypothetical individual who could only perform simple, routine, repetitive work, not requiring intensive interaction with co-workers or the public. Ms. Jacobson stated that such an individual could perform both the claimant's past relevant work, and the other jobs discussed. In addition, Ms. Jacobson also listed the jobs of retail sales, an unskilled, light exertional position with 3,000 jobs in the state and 105,000 nationally; ticket seller, an unskilled, light exertional position with 1,700 jobs in the state and 76,000 nationally; and counter clerk, an unskilled, light exertional position with 1,100 jobs in the state and 78,000 nationally. (R. 60-61).

Then, the ALJ asked Ms. Jacobson about a hypothetical individual who can only lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for a total of six hours in an eight-hour day; sit for a total of six hours in an eight-hour day; cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; and must avoid repeated exposure to extreme temperatures. Ms. Jacobson testified that such an individual could perform the claimant's past relevant work, and the jobs of retail sales, ticket seller, and counter clerk. (R. 61-62).

Next, the ALJ asked Ms. Jacobson about a hypothetical individual who could only perform

17

light, simple, routine, repetitive work, and must avoid intensive interaction with co-workers and the public. Ms. Jacobson stated that while such an individual could not perform the jobs of retail sales or counter clerk, such an individual could perform the jobs of machine feeder, an unskilled, light exertional position with 2,000 jobs in the state and 94,000 nationally; and product inspector and checker, an unskilled, light exertional position with 3,000 jobs in the state and 107,000 nationally. (R. 62).

Finally, the ALJ asked Ms. Jacobson about the same hypothetical individual who had to alternate sitting and standing at least once per hour for about thirty minutes to an hour at a time. Ms. Jacobson stated that the inspector and assembler jobs generally required standing, and that such limitations would restrict the individual to sedentary work. Ms. Jacobson described the jobs of cashier, a semi-skilled, sedentary position with 2,000 jobs in the state and 90,000 nationally; product assembler, an unskilled, sedentary position with 1,500 jobs in the state and 48,000 nationally; and document preparer, an unskilled, sedentary position with 1,000 jobs in the state and 48,000 nationally. (R. 64-65).

After the ALJ questioned Ms. Jacobson, the claimant's attorney asked Ms. Jacobson about certain limitations of pain. The attorney described an individual with the claimant's age, education, work history, and for whom pain creates a marked limitation on persistence, concentration, and pace. Ms. Jacobson stated that such an individual could not maintain successful employment. Ms. Jacobson then clarified that based on the claimant's testimony of her back pain, the claimant could not maintain substantial gainful employment. (R. 65).

*The ALJ Decision*

The ALJ rendered his decision on January 10, 2011, finding that the claimant was not

disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R. 18). The ALJ began his opinion with a detailed description of the five-step sequential evaluation process used to determine if a person is disabled under the Social Security Act. First, the ALJ found that the claimant met the insured status requirements of the Social Security Act through December 31, 2014. Then, the ALJ found that the claimant had not engaged in any substantial gainful activity since July 6, 2009. (R. 11).

Next, the ALJ found that the claimant had the severe impairments of diabetes mellitus and back pain (status-post remote motor vehicle accident). The ALJ noted that the claimant also alleged impairment because of minimal scoliosis and depression. However, the ALJ found the claimant's scoliosis as non-severe, as no medical professional had prescribed the claimant a brace or other corrective device, and the claimant had received no treatment for scoliosis. (R. 12).

Likewise, the ALJ found that the claimant's medically determinable affective disorder was not severe. The ALJ noted that the claimant took prescription Prozac for depression, but that a general physician prescribed the drug, and the claimant received no ongoing mental health treatment. Following the mode of analysis of the PRTF, the ALJ analyzed the effect of the claimant's depression on the four functional areas set out in section 12.00C of the listings. First, the ALJ found that the claimant had mild limitation on her ADLs. The ALJ noted that although the claimant stated that she rarely performed any housework or cooked, she testified at the hearing that she could perform such work if necessary. Next, the ALJ found that the claimant had mild limitation on her social functioning. The ALJ stated that the claimant often does not go out or visit friends and family, but that family comes to visit her, and the claimant's mother moved in with the claimant. Further, the ALJ noted that the claimant testified that she did not go out primarily because of her physical

19

limitations. (R. 12).

Then, the ALJ found that the claimant had mild limitation on the areas of concentration, persistence, and pace. The ALJ pointed to the claimant's statements that she often does not finish what she starts, and that she does not cope well with stress or change. However, the ALJ also found that the claimant had no problems managing money and could handle instructions. Finally, the ALJ found no evidence that the claimant experienced periods of decompensation. Because the claimant's depression placed no more than mild limitations on the claimant's functioning, the ALJ found that the claimant's medically determinable impairment of depression was not severe. (R. 12).

The ALJ then addressed the claimant's abdominal pain. The ALJ noted that the claimant sought treatment for the abdominal pain once in October 2010, and underwent diagnostic testing in November 2010. The ALJ found no evidence in the record indicating that the claimant's abdominal pain would last for a continuous period of twelve months, or that it imposed more than minimal limitations on her ability to work. (R. 12-13).

Thus, the ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled the listings. Regarding the claimant's back pain, the ALJ found no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis necessary to meet the listing for degenerative disc disease. Further, the ALJ found that the claimant's diabetes did not cause disorganization of motor function in two extremities, acidosis, or visual impairment. Similarly, the ALJ found no evidence of limitation on the claimant's ambulation caused by either the claimant's back pain and diabetes individually, or in combination. (R. 13).

Then, the ALJ found that the claimant had the RFC to lift or carry up to fifty pounds occasionally and twenty-five pounds frequently; stand or walk for a total of six hours in an eight-

hour day; sit for a total of six hours in an eight-hour day; balance, stoop, kneel, crouch, and crawl; frequently climb ramps and stairs; could not climb ladders, ropes, or scaffolds; and must avoid exposure to hazards and concentrated exposure to extreme temperatures. The ALJ stated that in determining the claimant's RFC, the ALJ considered the claimant's subjective complaints of pain under the Eleventh Circuit's three-part pain standard. The ALJ specifically referred to a "two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment." The ALJ stated that he must "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." Further, the ALJ stated that when the claimant's subjective testimony of pain is not "substantiated by objective medical evidence, [he] must make a finding on the credibility of the statements based on consideration of the entire case record." (R. 13-14).

The ALJ first discussed the claimant's subjective complaints relating diabetes. The ALJ noted that although the claimant testified to multiple visits to the emergency room for uncontrolled blood sugar, the ALJ found no evidence in the record of such visits. Further, the ALJ found that the claimant's diabetes was only problematic when she was not compliant with her diabetes medication. Similarly, although the claimant complained of debilitating back pain, she often appeared at the emergency room in "no apparent distress," and physical examinations routinely revealed largely normal results. (R. 14).

Thus, the ALJ found that the claimant's medically determinable impairments could reasonably cause the claimant's alleged symptoms. However, the ALJ found the claimant's statements concerning intensity, persistence, and limiting effects not credible to the extent that they were inconsistent with the claimant's RFC. The ALJ stated that the claimant used a brace and cane

21

at the hearing, even though the record did not indicate that they were medically necessary. Similarly, the ALJ found that the claimant's show of pain was not genuine. The ALJ specifically noted the paucity of medical treatment in the record between the claimant's previous period of disability, and the present alleged onset date. The ALJ found that the medical evidence in the record simply did not support the claimant's subjective testimony of pain. (R. 15).

The ALJ then discussed the claimant's alleged depression. The ALJ first noted that a physician not specializing in mental health prescribed the claimant Prozac for depression. The ALJ also noted that the claimant had sought no mental health treatment for depression, and that no evidence existed in the record corroborating the claimant's statement that she informed the emergency room doctors that her Prozac was not helpful. (R. 15).

Then, the ALJ found that the claimant could perform her past relevant work of cashier, as such work did not require any activities precluded by the claimant's RFC. Further, the ALJ found that even if the claimant could not return to her past relevant work, other jobs existed in significant numbers in the national economy that the claimant could perform, including dishwasher, hand packer, machine tender, retail sales, ticket seller, counter clerk, and assembler/machine feeder. Additionally, the ALJ found that the claimant could perform the jobs of product assembler and document preparer. (R. 16-17).

Therefore, the ALJ concluded that the claimant had not been disabled under the Social Security Act from the date of her alleged onset on July 6, 2009, through the date of the decision. (R. 18).

## VI. DISCUSSION

### 1. The Claimant's Impairments in Combination

The claimant argues that the ALJ did not properly consider the claimant's impairments in combination with each other. To the contrary, the court finds that the ALJ properly considered the combined effects of the claimant's alleged impairments.

Where a claimant alleges multiple impairments, the Commissioner must consider the combined effects of all impairments in determining disability, not only the individual effects of the several impairments. *Swindle*, 914 F.2d at 226; *Walker*, 826 F.2d at 1001; 20 C.F.R. § 416.923. The combination of the claimant's impairments may establish disability, even if the individual impairments alone would not. *Caulder*, 791 F.2d at 880. An ALJ may demonstrate that he considered the claimant's impairments in combination through statements that the claimant "did not have an impairment or combination of impairments" that met the listings. *Wilson*, 284 F.3d at 1224; *see also Jones*, 941 F.2d at 1533, *Wheeler*, 784 F.2d at 1076.

In the present case, the claimant alleged the impairments of diabetes mellitus, back pain, abdominal pain, and depression. The ALJ stated in his fourth finding that the claimant did "not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments." Here, the ALJ specifically discussed the claimant's diabetes and back pain. The ALJ first stated that the claimant did not have the requisite nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis necessary to meet the listing for degenerative disc disease. Similarly, the ALJ noted that the claimant's diabetes did not cause "significant and persistent disorganization of motor function in two extremities, acidosis, or a visual impairment."

The ALJ also stated that the evidence did not indicate that the claimant could not ambulate

effectively. Having considered the effects of the several impairments, the ALJ identified a combined element of both back pain and diabetes mellitus–limited ambulation. Not only did the ALJ state that he considered the combination of the claimant's multiple impairments, but he identified an additional functional area affected by both the claimant's diabetes and back pain, and found that the claimant did not have serious impairment of her ambulation. As to the combined effects of the claimant's depression and abdominal pain, the ALJ noted that no evidence existed in the record indicating that the claimant suffered more than minimal limitations from her abdominal pain and depression.

Thus, by his statement that he considered the claimant's multiple impairments in combination, and his identification of a common functional area affected by both of the claimant's severe impairments, the court finds that the ALJ properly evaluated the combined effects of the claimant's multiple impairments.

### 2. The Eleventh Circuit Pain Standard and the Claimant's Subjective Testimony of Pain

The claimant also argues that the ALJ did not properly apply the Eleventh Circuit pain test, and therefore, did not properly consider the claimant's subjective complaints of pain associated with diabetes, back pain, abdominal pain, and depression. The court finds that the ALJ properly applied the Eleventh Circuit pain test to discredit the claimant's subjective testimony.

When evaluating subjective testimony of pain, the Commissioner must apply the Eleventh Circuit's pain standard. The Commissioner must determine whether

(1)     there is evidence of an underlying medical condition; *and either*
(2)     objective medical evidence confirming the severity of the alleged pain arising from that condition, *or*
(3)     that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain.

*Foote*, 67 F.3d at 1560 (emphasis added); *Holt*, 921 F.2d at 1223; *Landry*, 782 F.2d at 1553.

24

Although the ALJ is not required to recite the pain standard verbatim, he must make findings that demonstrate a proper application of the pain standard. *Brown* , 921 F.2d at 1236. When discrediting a claimant's subjective testimony of disabling symptoms, the ALJ must clearly articulate adequate reasons for doing so. *Dyer*, 395 F.3d at 1210. Further, in evaluating subjective claims including pain, the Commissioner may consider the claimant's ability to perform ADLs both as they pertain to the claimant's ability to perform her past relevant work, and as the performance of those activities impact the claimant's credibility. 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); *see also Macia*, 829 F.2d at 1012.

In this case, the ALJ stated that he would evaluate the claimant's subjective symptoms under a "two-step process" where first, the ALJ considered "whether there is an underlying medically determinable physical or mental impairment," and second, "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." The ALJ essentially announced his application of the pain standard, using prongs one and three.

Then, the ALJ evaluated each of the claimant's diabetes, back pain, abdominal pain, and depression under these two prongs. First, the ALJ found that the claimant had a medically determinable impairment of diabetes. The ALJ rejected the claimant's testimony that she had to visit the emergency room multiple times for uncontrolled diabetes, because neither the ALJ nor the claimant's attorney found any evidence in the record substantiating claims of multiple emergency room visits. The ALJ further articulated that the claimant only received treatment for uncontrolled diabetes one time prior to her alleged onset date, and that the claimant was not compliant with her diabetes medication at that time. Thus, the ALJ properly discredited the claimant's testimony of the

severity and limiting effects of her diabetes by pointing to specific inconsistencies between the claimant's testimony and her medical treatment of record.

Similarly, the ALJ found that the claimant did have a medically determinable impairment of back pain caused by her automobile accident. The ALJ noted that the claimant complained of severe physical limitations from her pain, including the requirement that she lie down all day. The ALJ also noted that the claimant frequently stood and grimaced during the hearing, and wore a brace and used a cane at the hearing, even though no doctor ever prescribed the use of a brace or cane. Based on the great weight of the medical evidence, however, the ALJ found that the record did not support the claimant's subjective complaints of back pain. The ALJ stated that he found the claimant's show of pain at her hearing not genuine. Further, the ALJ noted multiple examinations that revealed no problems other than mild scoliosis. The ALJ noted that the claimant sought relatively little treatment after her prior period of disability, and she often appeared at examinations in "no apparent distress." Also, the ALJ noted that no treating or examining physician in the record imposed limitations on the claimant greater than those set forth in the RFC. Therefore, the ALJ, in identifying a lack of treatment and specific inconsistencies with the claimant's testimony and her medical records, properly discredited the claimant's subjective testimony of back pain.

As to the claimant's abdominal pain, the ALJ noted that the claimant sought treatment only one time after her alleged onset date for abdominal pain, and that the treating physician had not diagnosed the source of the claimant's pain at the time of the hearing. Thus, the ALJ properly found that the claimant did not have a medically determinable impairment causing her abdominal pain.

Likewise, the ALJ noted that although the claimant took Prozac for depression, she never sought any mental health treatment; did not receive her prescription from a mental health expert; and

26

produced no medical evidence substantiating her claims that she informed the emergency room doctors that her prescription did not ease her depression. Although the record does indicate that the claimant complained of an ineffective dosage of Prozac in 2006, the record contains no evidence of any other complaints about the claimant's prescription. Thus, the ALJ properly found that the claimant's depression did not impose more than minimal limitations on the claimant's functioning, based on the lack of treatment that the claimant sought for her depression.

Therefore, the court finds that the ALJ properly applied the Eleventh Circuit's pain test, and properly discredited the claimant's subjective testimony of diabetes, back pain, abdominal pain, and depression, by pointing to specific inconsistencies between the claimant's statements, and her record of medical treatment.

## VII. CONCLUSION

For the reasons stated, this court finds that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court simultaneously will enter a separate Order to that effect.

DONE and ORDERED this 24th day of September, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE